UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

JUN 1 4 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-182-GWU

PENNY RILEY,                                    PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to
    Step 4. If no, the claimant is not disabled. See 20 C.F.R.
    404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.      Can the claimant's severe impairment(s) be expected to result
        in death or last for a continuous period of at least 12 months?
        If yes, proceed to Step 5. If no, the claimant is not disabled.
        See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
        impairments meeting or equaling in severity an impairment
        listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
        Impairments)? If yes, the claimant is disabled. If no, proceed
        to Step 6.      See 20 C.F.R. 404.1520(d), 404.1526(a),
        416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity and the physical and mental
        demands of the work he has done in the past, still perform this
        kind of past relevant work? If yes, the claimant was not
        disabled.   If no, proceed to Step 7.   See 20 C.F.R.
        404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity, age, education, and past work
        experience, do other work--i.e., any other substantial gainful
        activity which exists in the national economy? If yes, the
        claimant is not disabled.   See 20 C.F.R. 404.1505(a),
        404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.   Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

                                        2

Riley

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Riley

        whether objective medical evidence confirms the severity of the alleged
pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

      Another issue concerns the effect of proof that an impairment may be
remedied by treatment.  The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

      In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987).  Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Riley

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Riley

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Riley

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Penny Riley, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of low back complaints, polycystic ovarian syndrome (for which multiple cystectomy was performed), controlled hypertension, mild obesity, diabetes mellitus (well-controlled), borderline intellectual functioning, and mild generalized anxiety disorder. (Tr. 29). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 31-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and past work experience could perform any jobs if she were capable of "medium" level exertion, and was restricted to "so-called low stress work where the tasks are simple [and] non-detailed or co-worker and public contact

7

are casual and infrequent[; w]here supervision is direct and non-confrontational, [and] where change[s] in the workplace are infrequent and gradually introduced." (Tr. 589). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Id.).[1]

There are several shortcomings with the ALJ's evaluation of the mental evidence.

First, the plaintiff was examined by a consultative psychological evaluator, Dr. Mary Allen Genthner, who diagnosed both a pain disorder and borderline intellectual functioning, and assigned a Global Assessment of Functioning (GAF) score of 55. (Tr. 172). A GAF score of 55 equates to "moderate" symptoms or difficulty and social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Edition-Text Revision)(DSM-IV-TR), p. 34. The psychologist indicated that the plaintiff had no ability to handle detailed or complex instructions and a "somewhat limited" ability to tolerate stress and pressure associated with day-

---

[1]The form of the hypothetical question differs substantially from the ALJ's residual functional capacity finding as given in the hearing decision, where the plaintiff is described as having the capacity to perform medium work "that involves low stress...and no more than a 'limited but satisfactory' ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, and respond to changes in the work setting."  (Tr. 31).  The finding may be broadly consistent with the hypothetical question, but there does not appear to be any good reason for giving the VE a hypothetical question using different wording.

8

Riley

to-day work activity. (Tr. 172-3). Otherwise, her ability to carry out and persist at simple repetitive tasks, maintain attention/concentration, relate to employers and co-workers, and work with others without being distracted or overwhelmed was described as "fair." (Tr. 172). The term "fair" was not defined.[2]

State agency psychologists who reviewed the record in January and March, 2002, concluded that the plaintiff would have a "moderately limited" ability to handle detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting. (Tr. 342-4, 361-3). The ALJ did not discuss these restrictions, however, focusing instead on the less specific "elaborations" on the capacities contained in the same reports. (Id.). As the Commissioner's regulations put it, "[s]tate agency medical and psychological consultants, and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation[; t]herefore, Administrative Law Judges must consider findings

---

[2]Shortly thereafter, the plaintiff's family physician referred her to the local Comprehensive Care Center (CCC) for palpitations and shortness of breath "possibly" secondary to a panic disorder. (Tr. 302).

of State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination [of disability]. 20 C.F.R. Section 416.927 (f)(2)(i). As the plaintiff points out on appeal, these restrictions given by the state agency sources are more limiting than implied in the hypothetical question. They are also generally consistent with the GAF score in the "moderate" range, from Dr. Genthner, from a CCC psychiatrist, Dr. Schremly, who saw the plaintiff on a few occasions and who assigned a score of 60 (Tr. 324), and from another psychiatrist who subsequently examined the plaintiff and also gave a GAF of 60 (Tr. 395). Therefore, the plaintiff's argument that these restrictions should have been, at a minimum, considered by the ALJ, is well taken.

Further medical evidence shows that the plaintiff's family physician referred her to Corbin Psychiatric and Counseling Service in June, 2003, after she complained of anxiety and depression. (Tr. 377). He diagnosed a generalized anxiety disorder. (Tr. 380). One office note dated August 4, 2003 from a psychiatrist at this service was contained in the record before the ALJ. Dr. Cecelia Carpio-Carigaba noted that the plaintiff had stopped treatment at the CCC with Dr. Schremly because she felt that he was not helping, but she currently described not being able to stand noise, not being able to drive, crying often, and having difficulty going to sleep. (Tr. 394). Dr. Carpio recorded an anxious mood and a constricted affect, and diagnosed a moderate recurrent major depressive disorder and a panic disorder

10

Riley

without agoraphobia. (Tr. 395).[3] She also appeared to give a GAF score of 60, and prescribed Valium and Zoloft. (Id.). Not all of her office notes are legible, but she did warn the plaintiff that she could not operate machinery while using medication. (Id.). This reasonable restriction from a treating source was not included in the hypothetical question, which had been given at the administrative hearing prior to time Dr. Carpio's information was submitted. (Tr. 589).

The plaintiff has also submitted additional evidence to the Appeals Council, concerning both her mental and physical condition after the date of the ALJ's decision. While this evidence cannot be considered as part of the Court's substantial evidence determination, it can be considered along with any other new evidence on remand.

The decision will be remanded for further consideration.

This the ___/4___ day of June, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[3]Dr. Carpio gave her diagnoses in terms of numbered codes listed in the DSM-IV-TR.

11